## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JAMES D. HINSON ELECTRICAL
CONTRACTING CO., INC., Individually and
On Behalf of All Others Similarly Situated,

        Plaintiff,

vs.                                  Case No. 3:07-cv-598-J-32MCR

BELLSOUTH TELECOMMUNICATIONS,
INC.,

        Defendant.

_____

## ORDER[1]

    This case is before the Court on Defendant BellSouth Telecommunications Inc.'s (BellSouth) Motion to Dismiss (Doc. 19) and Plaintiff James D. Hinson Electrical Contracting Co., Inc.'s (Hinson) Response thereto.  (Doc. 24.)  The Court conducted a hearing on Defendant's motion on November 29, 2007.

I.  Background

    This lawsuit arises out of actions taken pursuant to the Florida Underground Facility Damage Prevention and Safety Act.  Fla. Stat. § 556.101 et seq (2007). Under the statute, excavators give advance notice to utility companies of their

_____

[1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

activities and the utility marks its underground lines so as to prevent damage or a disruption of service to consumers.  Fla. Stat. § 556.105 (2007).  If the underground lines of the utility are nonetheless damaged despite being properly marked, the statute creates a rebuttable presumption of negligence and the excavator is liable to the utility "for the total sum of the losses to all member operators involved as those costs are normally computed."  Fla. Stat. § 556.106 (2007).

Hinson is an electrical contractor that regularly excavates near underground lines owned by BellSouth.  (Doc. 1 ¶ 3.)  Hinson damaged BellSouth's lines sometime before late June 2003.  (Id. at ¶¶ 12-14.)  In late June 2003, BellSouth sent Hinson a bill of $1934.49 for the damage to its underground lines.  (Id. at ¶ 13.)  Hinson paid that bill in July of the same year.  (Id. at ¶ 14.)  Hinson now alleges that this amount does not reflect BellSouth's actual losses and that BellSouth marked up the bill in excess of the total sum of its losses.  (Id. at ¶ 34.)  Although it has yet to seek certification, Hinson has pled this lawsuit as a class action complaint, defining the class as "[a]ll persons in Florida who as excavators or excavating contractors have been charged and paid 'costs to repair' to BellSouth as a result of damage they caused to BellSouth's underground facilities."  (Id. at ¶ 22.)

The complaint alleges that BellSouth is liable based on four theories: (1) that BellSouth's practice of marking up the bills violates the Florida Deceptive and Unfair Trade Practices Act, § 501.201 et seq, Florida Statutes (FDUTPA); (2) unjust

enrichment; (3) money had and received; and (4) fraud.  In Count V of the complaint, Hinson specifically requests declaratory and injunctive relief.  (Id. at ¶¶ 47-50.)

II.  Legal Standard

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  Castro v. Secretary of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006);  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson, 127 S.Ct. at 2200 (citation omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . .  a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. V. Twombly, 127 S.Ct. 1955, 1964-1965 (2007) (internal citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965.  The Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim

3

to relief that is plausible on its face." Id. at 1974.

III.  Discussion

The major disagreement between the parties at this stage, as clarified at the hearing on BellSouth's motion to dismiss, is whether the document sent to Hinson is more similar to a demand letter sent in the context of settling a tort claim or a bill sent for services rendered.  BellSouth argues that most of Hinson's claims fail because the document was sent in connection with their attempt to settle a tort dispute.  While this may turn out to be so, for the purposes of the motion to dismiss, this Court is required to take the allegations of the complaint as true.  The complaint alleges that Hinson received a "bill" from BellSouth, which it paid, and further alleges that the "bill" contained an "undisclosed" and improper markup.  See e.g. Doc. 1 ¶¶ 13-18, 20 and 35.  These allegations must be accepted as true for now.

A.  Count I states a valid FDUTPA Claim

FDUTPA states that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Fla. Stat. § 501.204(1) (2007).  BellSouth argues that Count I of Plaintiff's complaint must be dismissed on two grounds: (1) Plaintiff was not a consumer or the facts underlying the suit were not a consumer transaction and (2) BellSouth's acts did not occur in the course of trade or commerce. (Doc. 19 at 6-8).

4

### 1.  FDUTPA does not require Plaintiff to be a consumer

BellSouth argues that Plaintiff's FDUTPA claim must be dismissed because Plaintiff is neither a consumer nor is this a dispute regarding a consumer transaction. (Doc. 19 at 8.)  This argument is substantially based on two cases supporting the idea that FDUPTA is primarily a statute to protect consumers.  See Monsanto Co. v. Campuzano, 206 F.Supp 2d 1252, 1268 (S.D. Fla. 2002) (FDUTPA claim "cannot be maintained unless the alleged unfair or deceptive acts or practices complained of involved a consumer transaction"); Hughes Supply v. Continental Recovery Svcs., 2007 WL 2120318 (M.D. Fla. 2007) (dismissing FDUTPA counter-claim because defendant was not a consumer engaging in trade or commerce).

One of the purposes of FDUTPA, which this Court is instructed by the statute to "construe liberally," is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2) (2007).  The statute has been substantively amended twice, once in 1993 and again in 2001.  In 1993, the Legislature deleted FDUTPA's definitions of "consumer transaction" and "supplier" while broadening its definition of "consumer" to include "any commercial entity."  See Ch. 93-38, § 2, Laws of Fla.  Florida courts have concluded that "the 1993 Amendments to FDUTPA made clear that the statute is not limited to purely consumer transactions," but rather apply

5

"to any act or practice occurring 'in the conduct of any trade or commerce' even as between purely commercial interests." Beacon Property Management, Inc. v. PNR, Inc., 890 So.2d 274, 278 (Fla. Dist. Ct. App. 2004).   While Monsanto directly contradicts this assertion, Hinson correctly points out that the Monsanto court (along with other courts having considered the issue) reached that conclusion in reliance on cases decided before the 1993 amendments.  See Beacon Property Management, Inc., 890 So.2d at 277.  The 1993 Amendments defeat BellSouth's argument that a FDUTPA claim must concern a "consumer transaction."[2]

BellSouth's argument that Hinson must be a consumer itself to claim money damages under FDUTPA is contradicted by the 2001 amendments.  Prior to 2001, § 501.211(2), Florida Statutes, provided that "[i]n any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such consumer may recover actual damages, plus attorney's fees and court costs." (emphasis added).   However, FDUTPA's 2001 amendments replaced the word "consumer" with the word "person."  See Fla. Stat. § 501.211(2) (2007).  Courts in this district have held that "[t]his amendment demonstrates a clear legislative intent to

---

[2]     BellSouth's reliance on § 501.212(3) misses the mark.  That provision expressly excluded from FDUTPA "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3) (2007).  However, Hinson is not claiming damages to property, but rather overcharges pursuant to the Underground Facility Damage Prevention Act procedures. Therefore, § 501.212(3) is inapplicable.

allow a broader base of complainants who have been injured by violations of FDUTPA to seek damages, not just injunctive relief." Furmanite America, Inc. v. T.D. Williamson, Inc., 506 F.Supp 2d 1134 (M.D. Fla. 2007); True Title, Inc. v. Blanchard, 2007 WL 430659, *3 (M.D. Fla. 2007); Advanced Protection Technologies, Inc. v. Square D Co., 390 F.Supp 2d 1155, 1164 (M.D. Fla. 2005).  In this circumstance, Hinson, a commercial entity, can bring a FDUTPA claim for damages and injunctive relief.

2.  BellSouth's acts occurred in the course of trade or commerce

Additionally, BellSouth argues that the FDUTPA claim must be dismissed because the activities between the parties did not occur in the conduct of trade or commerce.  FDUTPA's core prohibition is that it does not allow unfair or deceptive practices in the conduct of "trade or commerce."  Fla. Stat. § 501.204(1).  "Trade or commerce" is further defined in the statute as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."  Fla. Stat. § 501.203(8) (2007).  It is undisputed that BellSouth is generally involved in the offering of telecommunications services to the general public.  Id.  Furthermore, the maintenance and repair of its underground cables would seem to be an integral part of BellSouth's business.

BellSouth says that it has not advertised, solicited or provided something of

7

value to Plaintiff.  However, as Hinson pointed out in its response, reading the statute to require a FDUTPA plaintiff to purchase something of value from the defendant would stand contrary to the express holdings of other courts.  See e.g. Gritzke v. M.R.A. Holding, LLC., 2002 WL 32107540 at *3-4 (N.D. Fla. 2002) (holding plaintiff featured in "Girls Gone Wild" video without her consent stated a valid FDUTPA claim despite never purchasing defendant's product); Niles Audio Corp v. OEM Systems Co., 174 F.Supp 2d 1315,1319-20 (S.D. Fla. 2001) (holding that 2001 FDUTPA amendments demonstrated "an intent to allow a broader base of complainants, including competitors . . . to seek damages").  While the Court may revisit the "trade or commerce" issue after some factual and legal development, the Court is not prepared to dismiss Hinson's FDUTPA claim on this basis at this early date.

B.  Count IV is pled with the particularity required by Rule 9(b)

BellSouth argues that Count IV of Hinson's complaint should be dismissed because it does not properly plead fraud.  Rule 9(b), Federal Rules of Civil Procedure states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  However the application of Rule 9(b) "must not abrogate the concept of notice pleading."  Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).  Here, Count IV is pled with sufficient particularity to give BellSouth notice of the alleged fraud.  Hinson provided the date, invoice number and amount charged on the purportedly fraudulent bill.  See Doc. 1 ¶ at 13.  Hinson alleges that this bill, while

purporting to be the cost to repair the damage, was marked up in excess of BellSouth's costs contrary to the statute.  <u>See</u> id. at ¶¶ 15-19.  This information fully alerts BellSouth to the "precise misconduct with which [it] is charged" and is sufficient under Rule 9(b).  <u>Durham v. Business Mgmt. Assoc.</u>, 847 F.2d 1505, 1511-12 (11th Cir. 1988).[3]  Moreover, Hinson has sufficiently pleaded the elements of a fraud claim under Florida law.  Therefore, the Court will deny BellSouth's motion to dismiss as to Count IV.

> ### C.  Counts II, III and V are valid alternative claims for relief

BellSouth argues that Hinson's unjust enrichment, money had and received, and declaratory and injunctive relief claims must be dismissed because Hinson has adequate remedies at law.  BellSouth also makes specific arguments to each count. After fully considering those arguments, the Court finds that it would be improper at this stage of the proceedings to dismiss Hinson's equitable claims.  While Hinson's unjust enrichment and money had and received claims do seek essentially the same relief as the fraud and FDUTPA claims, the Court sees no reason why Hinson should not be allowed to plead in the alternative.  As to Count V, declaratory and injunctive relief is appropriate under the FDUTPA statute.  Fla. Stat. § 501.211(1) (2007).[4]

---

[3]     Much of Defendant's argument is based on FCC regulations and the requirements of § 556.106(2), Florida Statutes.  These arguments are more appropriately made later.

[4]     Though it would have been better not to plead this as a separate count.

Accordingly, it is hereby

**ORDERED:**

1.  Defendant BellSouth's Motion to Dismiss (Doc. 19) is **DENIED**.

2.  The Court has fully considered the separate positions of the parties set forth in the Joint Proposal on Discovery (Doc. 32.)   The Court generally agrees with Hinson's proposed approach and directs the parties to file a joint proposed scheduling Order no later than **February 29, 2008**.[5]

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of February, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

jcd.
Copies to:
Counsel of Record

---

[5]     In adopting Hinson's approach, the Court is not intimating any position on BellSouth's defenses or whether, if Hinson's individual claim ultimately fails, this action would continue.