**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JAMES D. HINSON ELECTRICAL
CONTRACTING Co., INC., and JENSEN
CIVIL CONSTRUCTION, Inc.,
Individually and On Behalf of All Others
Similarly Situated,

          Plaintiff,

vs.                                                    Case No. 3:07-cv-598-J-32MCR

BELLSOUTH TELECOMMUNICATIONS,
INC.,

          Defendant.

_____

## ORDER[1]

    Plaintiffs James D. Hinson Electrical Contracting Co., Inc. (Hinson) and Jensen Civil

Contracting Co., Inc. (Jensen) brought suit against defendant BellSouth

Telecommunications, Inc. (BellSouth) for allegedly overcharging excavators that accidentally

damaged BellSouth's underground facilities.  Plaintiffs contend that BellSouth's bills for

repairing the damage to its facilities improperly included amounts for claims processing and

general corporate overhead expenses that were not recoverable under Florida law.

    This case is before the Court on Plaintiffs' Issues Brief in Response to the Court's July

13, 2009 Order and Supplemental Brief in Further Support of Plaintiffs' Motion for Partial

Summary Judgment (plaintiffs' Issues Brief), (Doc. 130), Defendant's Issues Brief and

_____

[1] The Court previously administratively closed this case (Doc. 160) and will now reopen
it.

Renewed Motion for Summary Judgment (defendant's Issues Brief), (Doc. 145), and Plaintiffs' Reply (Doc 148).  The Court held a hearing on the parties' Issues Briefs and other matters on October 19, 2010, the transcript of which is incorporated by reference.  (Doc. 154.)

## I.  Facts

Because the facts of this case are set out in this Court's previous orders (Docs. 33, 97), this Order will provide only brief summary. This lawsuit arises out of actions taken pursuant to the Florida Underground Facility Damage Prevention and Safety Act, Fla. Stat. § 556.101 (the Damage Prevention Act), which establishes procedures for dealing with damage to underground utility lines caused by excavators.

According to the Amended Complaint, Hinson and Jensen have repeatedly damaged BellSouth's underground facilities during excavations performed in connection with their construction and infrastructure services.  (Doc. 104 at 5-6.)  Since July 1, 2003, they have received numerous bills from BellSouth for such damages and, in many instances, have paid the full amount billed.  (Id. at 5-7.)  Hinson and Jensen thereafter filed suit against BellSouth, claiming they were charged more than BellSouth was legally entitled to recover under Florida law.

The Court described BellSouth's billing practices in its previous order on summary judgment (Doc. 97 at 5-7.)  The Court stated:

> The amounts charged to Hinson included both direct and indirect costs.  Two categories of "indirect costs" are not challenged by Hinson.  First, the Labor Cost of BellSouth's Facility Technician is a blended rate that BellSouth computes by adding the hourly wage of the technician to indirect "Labor

2

benefit" and "Labor support" costs. (Doc. 54-4.) BellSouth's "Labor support" charges include expenses for three levels of supervision, clerical support, support staff, vehicles and other tools and equipment, (id.), while the "Labor benefit" costs include costs for insurance, medical plans, social security and unemployment payroll taxes. (Id.) Second, BellSouth adds on a five percent "supply expense" to the actual cost of materials used to repair the damage. (Doc. 68-5 at 7.) This charge represents the indirect costs associated with stocking, tracking and transporting materials. (Id.)

The charges Hinson does contest are BellSouth's "Corporate Overhead" and "Claims Processing" expenses. First assessed to damage repair claims in 1998, the Corporate Overhead expense is applied as a percentage amount to labor charges, materials and third-party contractors. This expense consists of costs from two categories, Corporate Operations and Investment Related Costs. (Doc. 68-2 at 11.) Corporate Operations supports nine specific cost accounts: Executive, Planning, Accounting and Finance, External Relations, Information Management, Human Resources, Legal, Procurement, and Other General and Administrative. (Id.) Investment Related Costs include six specific cost accounts: Return on investment, Gross up for Income Taxes, Property Taxes, Capital Stock Taxes, Depreciation/Amortization Expense and Plant Specific Operations Expense. (Id.) The Corporate Overhead expense was approximately twenty percent on the 2003 Hinson bill.

The Claims Processing expense was first assessed in November 2001. A memorandum sent by Charles Ginn, former director of Security Staff/Claims for BellSouth, explained why the charge was added:

Whenever a cable is cut . . . or other types of plant facility damages occur, BellSouth incurs the cost of investigating and processing these damages in addition to the cost of repairing/replacing the damaged facilities. In order to be made whole from such damages and avoid having to pass these investigative/processing costs on to our customers, we will pursue recovery of these costs in addition to the costs of repairing/replacing the damaged facilities. A pro-rated amount of the total cost of our

3

> > claims personnel, who are directly involved in handling plant facility damages, will now be included in each plant facility damage bill.
>
> > (Doc. 64-11.)  While Ginn originally believed that the "corporate overhead" expense would be immediately reduced to reflect the reduction of the newly added "claims processing" expense, this did not occur until April 1, 2003. (Ginn Dep. 17:6-22, June 27, 2008.)   In 2003, the Claims Processing expense was approximately twenty percent.[2]  (Doc. 64-9 at 2.)
>
> (Doc. 97 at 5-8.)

In its previous order on summary judgment, the Court held that "the Damage Prevention Act does not provide BellSouth with any additional remedies or damages other than those available at Florida common law." (Doc. 97 at 18-19.)  The Court also asked the parties to address several remaining issues (id. at 19), which the parties have done in their briefs currently before the Court.

## II.  Legal Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' that establish the absence of any genuine material, factual

---

[2] For each charge, BellSouth assessed the Corporate Overhead markup, reached a new sum total, and then assessed the twenty percent Claims Processing markup to the new amount to reach the final amount billed.  While the parties have not proffered a precise numerical amount to the Court, this practice provides BellSouth with an approximate markup of forty percent over the bill without those assessments.  (It is not clear how the agreed to reduction on Hinson's bill affected these numbers).

4

dispute." <u>Branche v. Airtran Airways</u>, 342 F.3d 1248, 1252-53 (11th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).  In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor.  <u>Centurion Air Cargo, Inc. v. United Parcel Serv. Co.</u>, 420 F.3d 1146, 1149 (11th Cir. 2005).

## III. Discussion

The parties now primarily dispute whether Florida common law allowed BellSouth to recover its fees for corporate overhead and claims processing expenses from plaintiffs for their damage to BellSouth's underground facilities.[3]  The parties also discuss whether summary judgment is appropriate if BellSouth did recover amounts in excess of what it could receive in a common law tort claim.

### a. Damages under Florida Common Law

"Generally, damages for the wrongful injury of property are measured either by the diminution in value or the costs of repairing or restoring the property to its condition prior to the injury, usually referred to as the 'restoration' rule."  <u>Davey Compressor Co. v. City of Delray Beach</u>, 639 So.2d 595, 596 (Fla. 1994).  Because there is no identifiable market value for BellSouth's facilities, damages in this case are measured by the cost of repair or restoration.  <u>See</u> <u>id.</u> (using the cost of repair where diminution in value would not provide just

---

[3] As stated in this Court's previous order, Florida law governs this dispute.  (Doc. 97 at 9.)

compensation).

When measuring the cost of repair under Florida law, the injured party "is entitled to recover a fair and just compensation that is commensurate with the resulting injury or damage." <u>MCI Worldcom Network Servs., Inc. v. Mastec, Inc.</u>, 995 So.2d 221, 223 (Fla. 2008). The measure of a plaintiff's "fair and just compensation" under Florida law is guided by two principles. First, compensation is "designed to make the injured party whole to the extent that it is possible to measure such injury in monetary terms." <u>Id.</u> Second, the plaintiff "is not entitled to recover compensatory damages in excess of the amount which represents the loss actually inflicted by the action of the defendant." <u>Id.</u> When balancing these two principles, Florida courts have held that the plaintiff "may recover all damages which are a natural, proximate, probable or direct consequence of the act, but do not include remote consequences." <u>Davey Compressor Co.</u>, 613 So.2d at 61 (quoting <u>Douglass Fertilizers & Chem., Inc. v. McClung Landscaping, Inc.</u>, 459 So.2d 335, 336 (Fla. 5th DCA 1984)).

### 1. Corporate Overhead

The recovery of damages for corporate overhead expenses creates a potential conflict between the two principles discussed above. Stressing that BellSouth is not entitled to recover damages in excess of its actual losses, plaintiffs contend that "[e]xpenses for 'corporate overhead' are not recoverable under Florida law because those expenses are not proximately caused by any individual instance of damage." (Doc. 130 at 6). However, plaintiffs concede that "indirect expenses which can be directly related to the repairs are recoverable." (Doc. 130 at 9.) Plaintiffs thus challenge only BellSouth's recovery of general corporate overhead and do not contest BellSouth's recovery of overhead expenses for items

6

such as labor and equipment used in its repairs.  BellSouth, however, argues that it will only be made whole if overhead expenses that are "reasonable and calculated in accordance with sound accounting principles" are recoverable.  (Doc. 145 at 12.)

Florida courts have not addressed whether a plaintiff may recover overhead costs related to repairs necessitated by a defendant's tort.  Using the principles of Florida damages law as a guide, this Court must therefore look to the law of other jurisdictions to predict how the Florida Supreme Court would resolve this issue.

Other jurisdictions have created three distinct approaches to the recovery of overhead.  The first approach is to strictly limit a plaintiff's recovery of overhead expenses to those that are "directly and proximately caused by [the] defendant's negligence." Cincinnati Gas & Elec. Co. v. Brock, No. C-830137, 1983 WL 2375, at *5 (Ohio Ct. App. 1st Dist., Dec. 21, 1983).   Under this view, when overhead costs "would have been incurred whether the defendant [had committed the tort] or not," such costs are not "the natural consequence of the act of the defendant" and thus are not recoverable.  Cent. Ill. Light Co. v. Stenzel, 195 N.E.2d 207, 212 (Ill. Ct. App. 3d Dist. 1963).  Following this reasoning, "in order for [a] public utility to recover indirect overhead expenses, it must come forth with evidence proving that the indirect expenses would not have been paid *but for* the negligence of [the] defendant." Ohio Bell Tel. Co. v. William Carter Trucking Co., No. 17137, 1998 WL 906568, at *2 (Ohio Ct. App. 2d Dist. Dec. 31, 1998) (quotations omitted); see also Houston Oil & Minerals Corp. v. Am. Int'l Tool Co., 827 F.2d 1049, 1056-57 (5th Cir. 1987); United States v. Denver and Rio Grande W. R.R. Co., 547 F.2d 1101, 1105-06 (10th Cir. 1977); S. New England Tel. Co. v. Henkels & McCoy, Inc., No. CV 940538045S, 1996 WL 456977,

at \*5 (Conn. Super. Ct. 1996); <u>Dayton Power and Light Co. v. Puterbaugh</u>, No. 79-CA-13, 1980 WL 352693, at \*3-4 (Ohio App. 2d Dist. Mar. 7, 1980); <u>La. Power & Light Co. v. Smith</u>, 343 So.2d 367, 369 (La. Ct. App. 4th Cir. 1977).[4]

A rule limiting the recovery of overhead to expenses that would not have been incurred but for the defendant's negligence, however, would undermine the principle that compensatory damages are "designed to make the injured party whole to the extent that it is possible to measure such injury in monetary terms." <u>MCI Worldcom</u>, 995 So.2d at 223. Such a rule would virtually eliminate the ability of companies that perform their own repairs to recover overhead expenses.[5]  These overhead expenses may compose a large percentage of the resources that a plaintiff spends on repairs, such as the salaries of repair workers who would remain employed regardless of each individual instance of damage.[6]

---

[4] The Court in <u>Cincinnati Gas</u> explained that the law of damages is "not synonymous" with accounting principles because each discipline serves "distinct purposes." 1983 WL 2375, at \*3.  According to the court, "the purpose of the accountant . . . is to take all the costs of operating a business and distribute them in a fair and equitable manner to each job done by the business. . . . While the law is concerned that all the 'costs' of all torts committed against a plaintiff are recovered, the law is not concerned with whether each tortfeasor bears an equal portion of the total overhead in relation to the direct costs. To the contrary, the purpose of the law is to require the tortfeasor to pay only those costs incurred because of his actions." <u>Id.</u>

[5] As the Seventh Circuit explained in <u>United States v. Peavey Barge Line</u>, 748 F.2d 395, 400 n.7 (7th Cir. 1984), a rule requiring a plaintiff to prove that its overhead expenses would not have been incurred but for the defendant's negligence "seems to run directly counter to the definition of overhead that it cannot be directly attributable to any project and that it exists regardless of any particular repair projects."

[6] Courts requiring the plaintiff to prove that its overhead expenses would not have been incurred but for the defendant's conduct have thus denied recovery for expenses such as the salaries of repair workers, the salaries of supervisors, costs associated with equipment used in the repairs, or storage costs for replacement products. <u>See</u> <u>Denver and Rio Grande</u>

Although allowing the recovery of such expenses creates some tension with the principle that a plaintiff may not recover damages "in excess of the amount which represents the loss actually inflicted by the action of the defendant," it is necessary "to make the injured party whole to the extent that it is possible." Id. The Court therefore rejects the first approach to the recovery of overhead and holds that BellSouth is not strictly limited to the recovery of overhead expenses that would not have been incurred but for Hinson and Jensen's conduct.[7]

In a second approach to the recovery of overhead, some courts that have adopted the reasoning that overhead must be "directly and proximately caused by [the] defendant's negligence" have allowed the recovery of overhead expenses that are directly related to the plaintiff's repairs. See, e.g., Cincinnati Gas, 1983 WL 2375, at *4-5; Ohio Bell, 1998 WL

_____

W. R.R., 547 F.2d at 1105-06; Stenzel, 195 N.E.2d at 212; Puterbaugh, 1980 WL 352693, at *2-4; Public Serv. Co. of N.M. v. Jasso, 635 P.2d 1003, 1005 (N.M. Ct. App. 1981). These courts have denied recovery of such expenses because the repairs at issue did not cause the plaintiff to take actions such as hiring additional workers, renting additional warehouses, or purchasing additional equipment.

[7] This conclusion is supported by the fact that, when a plaintiff hires an independent contractor to repair its damaged property, the contractor's overhead costs will be included in its bill and thus will constitute part of the plaintiff's damages. As one court explained:

> If the utility were to employ an independent contractor to replace damaged [equipment], the contractor would most certainly consider and include overhead costs in determining the amount to be charged for his work. In that event, a person called upon to reimburse the utility for damages caused by his or her negligence would not be heard to complain that the utility's damages included an amount to reimburse the contractor for overhead.

Duquesne Light Co. v. Rippel, 478 A.2d 472, 473 (Sup. Ct. Pa. 1984); see also, e.g., Peavey Barge Line, 748 F.2d at 399. Placing limits on the recovery of overhead would thus create economic incentives for a plaintiff to hire an independent contractor, even when doing so would be inefficient.

906568, at *3.  Under this reasoning, courts have allowed plaintiffs to recover overhead expenses such as the salary of employees who conducted repairs, Houston Oil & Minerals, 827 F.2d at 1056-57, the cost of operating trucks used in repairs, La. Power & Light, 343 So.2d at 371, and expenses related to employee supervision, S. New England Tel. Co., 1996 WL 456977, at *4-5.[8]

While this approach may seem to represent a compromise between the principles of making the plaintiff whole and limiting damages to those caused by the defendant, there appears to be no logical distinction between overhead directly related to the plaintiff's repairs and general corporate overhead.  Cf. Board of Public Utilities of the City of Springfield v. Fenton, 669 S.W.2d 612, 616 (Mo. Ct. App. 1984) ("Further, we see no practicable way to calculate and distinguish that part of 'overhead' costs attributable to a particular operation.").  Courts that have adopted this rule have denied general overhead expenses on the reasoning that the plaintiff would have incurred such expenses regardless of the defendant's conduct.

---

[8] Although courts adopting this view have not recognized any inconsistency with the first approach discussed above, many of the cases cited for the first approach do not support the recovery of overhead unless it would not have been incurred but for the defendant's conduct, regardless of whether the overhead expenses were directly related to the repairs.  See Denver and Rio Grande W. R.R., 547 F.2d at 1105-06 (finding that the government could not recover overhead associated with training programs, equipment, and facilities related to its suppression of a fire negligently caused by the defendant); Stenzel, 195 N.E.2d at 212 (holding that a utility company could not recover for the cost of fringe benefits, supervision costs, or truck expenses in connection with its repair of a damaged utility pole); Puterbaugh, 1980 WL 352693, at *2-4 (holding that a utility company repairing a utility pole could not recover expenses such as the salaries of workers who conducted the repairs, supervision expenses, equipment expenses, or storage expenses); Public Service Co. of N.M., 635 P.2d at 1005 ("The fringe benefits and general and administrative charges are not appropriate elements of damages in this case, because they do not compensate [the plaintiff] for any loss.").

See S. New England Tel. Co., 1996 WL 456977, at *4-5;  Cincinnati Gas, 1983 WL 2375, at *4; Ohio Bell, 1998 WL 906568, at *3.  As explained above, however, overhead expenses that are directly related to a plaintiff's repairs, such as labor and equipment costs, ordinarily are also incurred regardless of the defendant's conduct.  Therefore, the principle used by these courts to deny the recovery of general overhead expenses—that such expenses were not caused by the defendant—dictates that overhead expenses directly related to the repairs should be unrecoverable as well.

The problems with this approach are demonstrated by the difficulty courts have encountered when trying to determine which categories of overhead costs are directly related to a plaintiff's repairs.  For example, in Houston Oil & Minerals, the court allowed the plaintiff to recover overhead for the salary of repair workers but did not allow recovery for fixed expenses relating to facilities and equipment.  827 F.2d at 1056-57.  In Cincinnati Gas, however, the court allowed the plaintiff to recover overhead for the cost of operating vehicles and distributing materials used in repairs but limited labor overhead expenses to fees associated with individuals who directly worked on the repairs.  1983 WL 2375 at *2.  Without a coherent guidepost to limiting the recovery of overhead damages to that directly related to a plaintiff's repairs, it becomes impossible to determine which categories of overhead should be recoverable.

In a third approach to the recovery of overhead, other courts have held that a plaintiff "need not establish a direct connection between overhead charges and a particular repair project, but may recover overhead charges that are justified by a reasonable relationship to the repair work."  United States v. Capital Sand Co., 466 F.3d 655, 659-60 (8th Cir. 2006).

11

Some courts have found that overhead expenses have a reasonable relationship to repair work when overhead is allocated "in accordance with the accounting principles mandated by [law]". Ohio Edison Co. v. Roman, No. 97-CA-006735, 1998 WL 646754, at *2 (Ohio Ct. App. 9th Dist. Sept. 16, 1998); see also Hartford Elec. Light Co. v. Beard, 213 A.2d 536, 537 (Conn. Cir. Ct. 1965); Miss. Power & Light Co. v. Tillman, 291 So.2d 736, 739 (Miss. 1974); Cinncinati Bell, Inc. v. Cooper, 491 N.E.2d 411, 412 (Ohio Mun. Ct. 1985); Dusquesne Light Co. v. Ripple, 478 A.2d 472, 474 (Pa. Super. Ct. 1984); Wash. Water Power Co. v. Miller, 762 P.2d 16, 18 (Wash. Ct. App. 1988).

Under this approach, because general corporate overhead supports every function of the company, a plaintiff that conducts its own repairs will only be fully compensated if it can recover those overhead costs reasonably allocated to repairs. See, e.g., Peavey Barge Line, 748 F.2d at 401. Moreover, the plaintiff will not recover in excess of the loss inflicted by the defendant because, "[a]llowance of the proportionate share of overhead costs . . . puts a proper share of the costs upon the tortfeasor who had damaged the property rather than upon the consumers who buy services from the utilities . . . ." Wash. Water Power, 762 P.2d at 18. Courts also often rely on the fact that if the plaintiff hired an independent contractor to perform its repairs, the contractor's overhead would be included as part of the cost to repair the damage caused by the defendant. See e.g., Peavey Barge Line, 748 F.2d at 399 ("[R]easonable overhead charges can be included in the cost of repairs even if the injured party makes the repairs itself since such charges would be billed by any outside firm selected to complete the repairs.").

Although this is a close question of law, the Court finds that the third approach best

comports with Florida damages law.  A damaged corporation[9] that conducts its own repairs thus may recover overhead costs that bear a reasonable relationship to its repair work.  The Court can find no logical distinction between so-called direct overhead, such as the cost of employees who personally perform repairs, and general overhead, such as the cost of corporate executives who oversee repair operations.  Moreover, allowing a corporation to recover overhead expenses that bear a reasonable relationship to its repair work best accommodates the principles of Florida damages law by allowing the corporation to be fully compensated while not recovering more than the loss inflicted by the defendant.  While the allocation of overhead in accordance with accounting principles is evidence of which expenses bear a reasonable relationship to the corporation's repair work, accounting conclusions are not necessarily dispositive.  See Cincinnati Gas,1983 WL 2375, at *3.  The question of whether any particular overhead cost bears a reasonable relationship to the corporation's repair work depends on the circumstances of the particular case.

BellSouth has presented evidence that its corporate overhead expenses bear a reasonable relationship to its repair work.  BellSouth's financial expert concludes that "BellSouth's methodology reasonably allocates Overhead Expense so that Damages bear their proportionate share, and no more."  (Doc. 68-1 at 8.)  In more detail, the report states:

> BellSouth's allocation methodology proportionately spreads the indirect costs of support activities and assets across all $13 billion of BellSouth's operating expenses, including expenses spent on labor, materials and outside contractors.  Therefore, from an accounting perspective, the only way to apportion the

---

[9] This case involves a corporation; this same analysis may well apply to other types of business organizations.

> appropriate amount of overhead to facility damage repair activities is to apply the overhead rate to all expense categories included in damage claims invoices, including labor, material and outside contractor costs. . . . The personnel involved in damage repair activities impact the indirect costs . . . . Similarly, the Investment Related Costs account categories capture expenses associated with investments in buildings, computers, furniture, equipment and other assets that support all corporate activities, including damage repair activities.

(Doc. 68-1 at 8.)   The BellSouth employee responsible for accounting in the region including Florida,  Guy L. Cochran, has reached similar conclusions.  (Docs. 84-2 at 7, 55-1 at 38-41.)

Plaintiffs, however, have not presented any evidence regarding whether BellSouth's overhead expenses bear a reasonable relationship to its repair work.   Plaintiffs' expert instead concludes that BellSouth's overhead expenses would not be recoverable under the more restrictive legal tests discussed above because BellSouth cannot show that its expenses would not have been incurred but for the excavators' conduct.[10]  The Court's ruling renders this opinion irrelevant; while the Court is inclined to believe that BellSouth's overhead allocation is reasonable, the Court will allow plaintiffs' expert to revise his opinion (if he is able to) in light of the Court's ruling.   Once this is done, the Court will determine whether it can decide the overhead issue as a matter of law or whether it will be tried to a jury.

---

[10] In his deposition, plaintiffs' expert explicitly states that his "report did not opine as to the adequacy of the amounts that are being recovered." (Doc. 65-1 at 37.)  Instead, plaintiffs' expert concludes that "BellSouth recovers more than the direct costs it incurs in repairing [its] damages" and that "contractors/excavators end up paying for costs they do not cause." (Doc. 64-14 at 2.)   Plaintiffs' expert also explains that while BellSouth's objective in establishing repair charges is being made whole, "there are key differences between being 'made whole' as BellSouth intends, and recovering the costs actually (or directly) incurred in repairing any damages."  (Id. at 3.)

14

### 2. Claims Processing

The claims processing expense is a charge designed to account for the expenses of BellSouth's Claims Organization division. "The BellSouth Claims Organization has the responsibility and authority to receive, track, investigate, bill, and settle all facility damages." (Doc. 57-3 at 7.)   After being notified of damage to a BellSouth facility, the Claims Organization division completes an on-site investigation "to provide the necessary details to enhance . . . identification of the responsible party." (Id.)  The Claims Organization then "enters data . . . in the claims reporting systems . . . and renders billing to responsible part[ies]." (Id.)  The Claims Department does not conduct any repairs or cause third-party contractors to be hired for that purpose.  (Doc. 57-1 at 25-26.)  An internal BellSouth memorandum explains that the purpose of the claims processing charge is to recover the cost of "investigating and processing" claims and distinguishes such costs from the "cost of repair/replacing the damaged facilities." (Doc. 57-4 at 3.)

 Plaintiffs contend the claims processing expense is not recoverable under Florida common law because it represents costs associated with preserving and protecting BellSouth's legal claims.  (Doc. 130 at 4-6.)  BellSouth argues the claims processing expense complies with accepted accounting principles and reflects costs that are caused by excavators that damage BellSouth's property. (Doc. 145 at 6-7.) BellSouth also states that "the Processing Expense expressly does not include attorney's fees." (Doc. 145 at 19-20.)

Under Florida law, "[a]ttorney's fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery." Price v. Tyler, 890 So.2d 246, 250 (Fla. 2004) (quotation omitted).  Courts have

15

held that this rule is not limited to attorney's fees, but also prohibits the recovery of pre-litigation costs related to the investigation and preparation of legal claims.  See Express, LLC v. Fetish Group, Inc., 464 F. Supp.2d 965, 978 (C.D. Cal. 2006) (characterizing the pre-litigation costs of an attorney to investigate a possible claim as attorney's fees rather than business expenses); Rimer v. State Farm Mut. Auto. Ins., 148 S.E.2d 742, 746 (S.C. 1966) ("Where the rights, or asserted rights, of parties are in conflict, it is inevitable that each party desiring to protect his rights must give time and attention to that end. To do so is not generally an element of damage . . . ."); Tex. Mut. Ins. v. Ray Ferguson Interests, Inc., No. 01-02-00807-CV, 2006 WL 648834, *at 8 (Tex. Ct. App. March 16, 2006) ("[Plaintiff's] evidence . . . can be summarized as financial loss due to time spent by [plaintiff's] employees on litigation matters (discovery, depositions, and the like).  Such damages are generally not recoverable unless a statute or contract provides for their recovery.").  Moreover, in the context of an action for breach of contract, a Florida appellate court held that a plaintiff could not recover "claim preparation damages" because the parties were "not entitled to pre-litigation costs."  City of Miami v. Tarafa Constr., 696 So.2d 1275, 1277 (Fla. 3d D.C.A. 1997).[11]

While several jurisdictions have found that a plaintiff may not recover its costs for the investigation and preparation of legal claims, the parties have cited, and the Court has found, only one case dealing with an analogous claims processing charge.  In that case, Curt's

---

[11] Although Tarafa Construction involved a contract dispute, this Court finds it to be persuasive authority since both contract and tort damages seek to allow "a fair and just compensation that is commensurate with the resulting injury or damage."  See MCI Worldcom, 995 So.2d at 223.

Trucking Co. v. City of Anchorage, the Alaska Supreme Court considered the propriety of

a city charging "[e]xpenses incurred by the City's Risk Management Office in processing

claims against third parties who damage City property."  578 P.2d 975, 976 (Alaska 1978).

The court in Curt's Trucking held that claims processing charges are similar to the costs of

investigating and preparing legal claims and thus are not recoverable. The court explained:

> Whenever tortious injury is inflicted, the party suffering harm
> faces, at a minimum, disruption and inconvenience.  In the
> process of protecting a claim and acting upon it, an injured party
> usually expends time, effort and money.  Some of these items
> are readily quantifiable, while others either defy valuation entirely
> or are measurable only when the party suffering damage is a
> large organization with a specialized division to conduct the
> necessary claims activities.  Such costs normally should be
> regarded as unrecoverable expenses which arise due to the
> inherent friction within our system of damage recovery through
> civil litigation.  As such, they are not properly included as items
> of damage.

Id. at 981 (footnote omitted).[12]

The Court finds the reasoning of the Alaska Supreme Court to be persuasive and thus

holds that BellSouth's claims processing expense is unrecoverable under Florida common

law.[13]  Like the Risk Management Office in Curt's Trucking, BellSouth's Claims Processing

Department does not perform work that supports its repair operations or is otherwise

---

[12] In Golden Valley Elec. Assoc. v. Revel, 719 P.2d 263, 264-65 (Alaska. 1986), the Alaska Supreme Court reaffirmed the holding of Curt's Trucking and found that a utility company could not recover costs associated with its investigation into the defendant's theft.

[13] The Court has reviewed the decision of the Public Service Commission in the Miami-Dade County "Manhole" Ordinance case.  While BellSouth may have included a charge analogous to the Claims Processing expense in that context, that charge does not appear to have been challenged in the proceeding.

17

reasonably related to its repair work.  See id.  Instead, the Claims Processing Department primarily performs functions such as investigating claims and engaging in settlement discussions.   Courts have found that charges for such activities are unrecoverable as litigation expenses.  See Express, 464 F. Supp.2d at 978; Rimer, 148 S.E.2d at 746; cf. Tarafa Construction, 696 So.2d  at 1277.   Therefore, as the court explained in Curt's Trucking, "claims processing expenses are more properly characterized as costs incurred in safeguarding the [plaintiff's] claims prior to litigation than as overhead incurred in repairing [the plaintiff's] property." Curt's Trucking, 578 P.2d at 981.[14]  Accordingly, BellSouth's claims processing expense cannot be characterized as part of its cost to repair and thus is not recoverable under Florida common law.[15]

> **b.    Plaintiffs' Claims**

The parties also dispute whether the Courts' rulings on the amounts recoverable under Florida common law affect whether summary judgment should be granted on plaintiffs' claims under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 (FDUTPA) and for unjust enrichment.

"The FDUTPA broadly declares unlawful any unfair or deceptive acts or practices

---

[14] BellSouth has not cited any precedent indicating that its claims processing expenses are more properly characterized as recoverable overhead costs.

[15] Although BellSouth asserts that it "incurs [claims processing] costs for record keeping and accounting purposes regardless of whether a claim is going to be litigated" (Doc. 145 at 19-20), this assertion is devoid of any factual development.  The evidence cited above demonstrates that the purpose of the claims processing charge was to recover for the cost of investigating and processing claims and that the charge was unrelated to BellSouth's repair work.

18

committed in the conduct of any trade or commerce." <u>True Title, Inc. v. Blanchard</u>, No. 6:06-cv-1871, 2007 WL 430659, at * 3 (M.D. Fla. Feb. 5, 2007). "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" <u>Zlotnick v. Premier Sales Group</u>, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting <u>PNR, Inc. v. Beacon Prop. Mgmt., Inc.</u>, 842 So.2d 773, 777 (Fla. 2003)).

Plaintiffs assert that, since BellSouth charged more than it was entitled to recover, its bills were deceptive under FDUTPA as a matter of law. (Doc. 130 at 12-14.) BellSouth, however, argues that its billing practices were not deceptive because plaintiffs understood that BellSouth's bills included overhead expenses. (Doc. 145 at 21-25.)

Although a reasonable excavator may have known that BellSouth would include charges for some indirect costs, a material issue of fact remains as to whether BellSouth's bills were likely to mislead a reasonable consumer into believing that the entire amounts charged were legally recoverable.[16]  The parties have therefore failed to demonstrate that they are entitled to summary judgment on plaintiffs' FDUTPA claims.

"In Florida, a claim for unjust enrichment is an equitable claim based on a legal fiction which implies a contract as a matter of law even though the parties to such an implied contract never indicated by deed or word that an agreement existed between them." <u>14th</u>

---

[16] Although plaintiffs cite several cases which  indicate that overcharging consumers may constitute a violation of FDUTPA as a matter of law, none of these case was decided in this factual posture. <u>See</u> <u>Turner Greenberg Assoc., Inc. v. Pathman</u>, 885 So.2d 1004 (Fla. 4th DCA 2004); <u>W.S Badcock Corp. v. Myers</u>, 696 So.2d 776 (Fla. 1st DCA 1997); <u>Latman</u>, 758 So.2d at 703.  The Court cannot conclude at this point that BellSouth's actions were deceptive as a matter of law.

19

& Heinberg, L.L.C. v. Terhaar and Cronley General Contractors, Inc., 43 So.3d 877, 880 (Fla. App. 1st DCA 2010). "The elements of a cause of action for unjust enrichment are (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Greenfield v. Manor Care, Inc., 705 So.2d 926, 930-31 (Fla. 4th DCA 1997). At this stage in the proceedings, a question of fact remains as to whether it would be inequitable for BellSouth to retain the entire amounts paid by plaintiffs.[17]

It is hereby

**ORDERED:**

1. The Court will proceed as stated herein.

2. Defendant BellSouth's Renewed Motion for Summary Judgment (Doc. 145) is **GRANTED IN PART AND DENIED IN PART** as stated in herein. Plaintiffs' Motion for Partial Summary Judgment (Doc. 130) is **GRANTED IN PART AND DENIED IN PART** as stated herein.

3. No later than **May 2, 2011**, Plaintiffs may serve an amended expert report regarding the overhead issue in light of the Court's ruling (or may choose to stand on their original report).

4. This case is **SET** for a telephone status conference on **April 18, 2011 at 9:30 a.m.**

---

[17] Again, because the parties have not cited any cases decided in this factual context, the Court cannot conclude that, as a matter of law, it would be inequitable for BellSouth to retain the amounts billed.

20

Counsel for plaintiffs shall initiate the telephone conference by calling counsel for defendant

and then calling the Court's polycom telephone line, (904) 549-1949.[18]

    5.  The Clerk shall administratively reopen the case.

    **DONE AND ORDERED** at Jacksonville, Florida, this 28th day of March, 2011.


                                         TIMOTHY J. CORRIGAN
                                         United States District Judge

js.
Copies to:
Counsel of Record

---

[18] To maximize the quality of the audio-connection, counsel are requested not to use cell phones or speaker phones during the hearing.

21