**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JAMES D. HINSON ELECTRICAL
CONTRACTING CO., INC., and JENSEN
CIVIL CONSTRUCTION, INC.,
Individually and On Behalf of All Others
Similarly Situated,

        Plaintiff,

vs.                                    Case No. 3:07-cv-598-J-32MCR

BELLSOUTH TELECOMMUNICATIONS,
INC.,

        Defendant.

_____

## ORDER

      Plaintiffs James D. Hinson Electrical Contracting Co., Inc. (Hinson) and Jensen Civil

Contracting Co., Inc. (Jensen) brought this putative class action lawsuit against defendant

BellSouth Telecommunications, Inc. (BellSouth) for allegedly overcharging excavators that

accidentally damaged BellSouth's underground facilities.  Plaintiffs contend that BellSouth's

bills for repairing the damage to its facilities improperly included amounts for claims

processing and general corporate overhead expenses that were not recoverable under

Florida law.  BellSouth has filed counterclaims against plaintiffs and the putative class,

seeking recovery in tort for the damage to its facilities above what it has already collected.

This case is before the Court on Plaintiffs' Motion for Class Certification (Doc. 131),

Defendant BellSouth's Brief in Opposition (Doc. 146), and Plaintiffs' Reply (Doc. 149).  The

Court held a hearing on class certification and other issues on October 19, 2010, the transcript of which is incorporated by reference.  (Doc. 154.)

## I. Background

The facts of this case are set forth in this Court's previous orders.  (Docs. 33, 97, 167.)  To provide a brief summary, Hinson and Jensen damaged BellSouth's underground facilities in connection with their construction and infrastructure services.  (Doc. 104 at 5-6.)  Since July 1, 2003, they have received numerous bills from BellSouth for such damages and, in many instances, have paid the full amount billed.  (Id. at 5-7.)  In this suit, Hinson and Jensen claim that BellSouth charged more for its repair work than it would have been entitled to recover in an action under Florida law.

Plaintiffs have moved to certify the following class:

> All excavators or excavating contractors within the meaning of the Underground Facility Damage Prevention and Safety Act, F.S.A. § 556.101 et seq., who paid a bill from BellSouth for the cost of repairing damage to its underground facilities in Florida during the period from June 28, 2003 through the date of certification.

(Doc. 131 at 8.)  Plaintiffs would exclude the following from the proposed class: "BellSouth's officers, directors and employees; any damagers who have furnished BellSouth with a written release of their claims; and any damagers who have entered into a contract with BellSouth requiring that their claims be arbitrated."  (Id.)  Each member of the class would assert claims based on the same four legal theories: violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 (FDUTPA), fraud, unjust enrichment, and

money had and received.  (<u>Id.</u> at 9.)[1]

## II. Legal Standard

Before a district court certifies a class, it must find that "all the requirements of Fed.

R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)" have been

met.  <u>Jackson v. Motel 6 Multipurpose, Inc.</u>, 130 F.3d 999, 1005 (11th Cir. 1997) (footnotes

omitted).  In relevant part, Rule 23 provides:

> (a) **Prerequisites to a Class Action.**  One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) **Class Actions Maintainable.**  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> . . .
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23.   The movant has the burden of proving that class certification is

appropriate under Rule 23.  <u>See</u> <u>Hudson v. Delta Air Lines, Inc.</u>, 90 F.3d 451, 456 (11th Cir.

---

[1] Before proceeding to determine class certification, the Court determined that plaintiffs' claims are viable.  (Docs. 97, 167.)

1996); <u>Gilchrist v. Bolger</u>, 733 F.2d 1551, 1556 (11th Cir. 1984).[2]

## III. Discussion

### a. The Requirements of Rule 23(a)

The Court first turns to the requirements of Rule 23(a) in analyzing whether the proposed class may be certified.  While BellSouth does not contest all four prongs of Rule 23(a), "a court nevertheless has the responsibility of conducting its own inquiry as to whether the requirements of Rule 23 have been satisfied in a particular case."  <u>Valley Drug Co. v. Geneva Pharm., Inc.</u>, 350 F.3d 1181, 1188 (11th Cir. 2003).

### 1. Numerosity

The numerosity requirement of Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "Although mere numbers are not dispositive, the Eleventh Circuit's general rule is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" <u>Kuehn v. Cadle Co., Inc.</u>, 245 F.R.D. 545, 548 (M.D. Fla. 2007) (quoting <u>Cox v. Am. Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1553 (11th Cir. 1986)).

The numerosity requirement is satisfied in this case.  Plaintiffs have submitted evidence that there are more than 6,500 members of the proposed class  (Doc. 131 at 4, 10.), and  BellSouth does not contest these numbers or the establishment of numerosity under Rule 23(a)(1).  Accordingly, the Court finds that joinder is impracticable and

---

[2] The named plaintiffs must also demonstrate that they "personally suffered injury" with respect to each claim to establish standing.  <u>See</u> <u>Griffin v. Dugger</u>, 823 F.2d 1476, 1482-83 (11th Cir. 1987).  Because Hinson and Jensen were allegedly overcharged in the same manner as the putative class members, that requirement is easily met here.

numerosity is present.

### 2. Commonality

"Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). "Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982)). "Where the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met." In re Terazosin Hydrochloride, 220 F.R.D. 672, 685 (S.D. Fla. 2004).

Plaintiffs have established commonality in this case. BellSouth sent each class member similar bills for the cost of repairing its damaged facilities, and each bill included charges for general corporate overhead and claims processing expenses. This conduct presents several common legal issues, including whether corporate overhead and claims processing expenses are recoverable under Florida law, whether BellSouth's bills were deceptive, and whether BellSouth acted intentionally.[3]

### 3. Typicality

"A class representative must possess the same interest and suffer the same injury as the class member in order to be typical under Rule 23(a)(3)." See Murray, 244 F.3d at 811.

---

[3] Rather than challenge commonality, BellSouth argues that common questions do not predominate under Rule 23(b). The issue of predominance is a separate inquiry addressed below.

"Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1287 (11th Cir. 2001).  "The claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" Williams, 568 F.3d at 1357 (quoting Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)). "The typicality requirement may be satisfied despite substantial factual differences, however, when there is a 'strong similarity of legal theories.'" Murray, 244 F.3d at 811 (quoting Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985)).

Plaintiffs' claims are typical of the claims of the class because they all arise from similar BellSouth billing practices and rely on the same legal theories.  Although BellSouth contends typicality is not met because proving plaintiffs' claims would not necessarily prove the claims of each class member (Doc. 146 at 19), plaintiffs are not required to make such a showing.  Instead, the named plaintiffs are merely required to show that they "share the issues common to other class members," a requirement they have easily met.  See Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:13 at 317 (4th Ed. 2002).

### 4.  Adequacy

"The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting Valley Drug Co., 350 F.3d at 1189)).  As demonstrated by their representation before this Court, there is no

question as to the adequacy of counsel.

BellSouth contends, however, that plaintiffs have a substantial conflict of interest with certain class members.  According to BellSouth, 183 of the approximately 6,500 members of the proposed class are also operators of underground facilities and thus members of Sunshine State One-Call of Florida, Inc. ("One-Call"), the statutorily created corporation used to process claims for damage to underground facilities under the Florida Underground Facility Damage Prevention and Safety Act, Fla. Stat. § 556.101 (the Damage Prevention Act).  According to BellSouth, members of One-Call have an interest in maximizing recovery for facility damage and thus have interests opposed to those of the class representatives. (Doc. 146 at 18-19.)

"It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent."  Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000).  A representative will be deemed inadequate, however, "only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy."  Id.

The specific issues in this controversy concern whether BellSouth's billing practices were deceptive, fraudulent, or resulted in unjust enrichment.  It is unclear why any class members, including members of One-Call, would benefit from BellSouth's alleged practice of overcharging for damages caused to BellSouth's facilities.  If plaintiffs' claims are successful on a class-wide basis, all class members will benefit by recovering the amounts overcharged.

Moreover, there is no evidence that any of the One-Call class members bill excavators that damage their facilities in the same manner as BellSouth. Even if such evidence were presented,

> the fact that an illegal[ activity] tends to favor the long-term interests of several large members of the putative class is not sufficient to prevent class certification. This is not an interest the law is willing to protect. See 3B Moore's Federal Practice ¶ 23.06-2 at 23-182 (2d ed. 1993 & Supp.1994) (a court is not authorized to dismiss a class action based upon a substantial legal claim merely because some members of the class prefer to leave the violation of their rights unremedied) (citing cases).

In re Potash Antitrust Litig., 159 F.R.D. 682, 692 (D. Minn. 1995). Moreover, members of One-Call may opt out of the class if they feel they are not being adequately represented. See e.g., Payne v. Travenol Labs, Inc., 673 F.2d 748 (5th Cir. 1982).

**b. The requirements of Rule 23(b)(3)**

Plaintiffs seek to certify their class under Rule 23(b)(3). That rule provides that a class for damages may be certified when:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

**1. Predominance**

Plaintiffs must first establish that common questions of law and fact predominate over any individual, plaintiff-specific issues. "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over

8

individual questions.'" See Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004) (quoting In re Theragenics Corp. Secs. Litig., 205 F.R.D. 687, 697 (N.D. Ga. 2002)). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" Williams v. Mohawk Indus., 568 F.3d 1350, 1357 (11th Cir. 2009) (quoting Klay, 382 F.3d at 1255). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." Klay, 382 F.3d at 1255. This Court must therefore examine the extent to which plaintiffs' legal claims require individualized proof.

### i. Plaintiffs' Claims under FDUTPA

"The FDUTPA broadly declares unlawful any unfair or deceptive acts or practices committed in the conduct of any trade or commerce." True Title, Inc. v. Blanchard, No. 6:06-cv-1871, 2007 WL 430659, at * 3 (M.D. Fla. Feb. 5, 2007). A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006). "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" Zlotnick v. Premier Sales Group, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So.2d 773, 777 (Fla.2003)). To establish causation and damages, a plaintiff "need not show actual reliance on the representation or

omission at issue." <u>Davis v. Powertel, Inc.</u>, 776 So.2d 971, 973 (Fla. 1st DCA 2000); <u>see also</u>, <u>e.g.</u>, <u>Cold Stone Creamery, Inc. v. Lenora Foods I, LLC</u>, 332 Fed. Appx. 565, 567 (11th Cir. 2009) ("[T]he FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.  But the plaintiff must prove that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.") (quotation omitted).

BellSouth argues that common questions do not predominate because some class members were aware that BellSouth charged indirect costs such as overhead in its repair bills.  According to BellSouth, although plaintiffs need not demonstrate reliance on BellSouth's allegedly deceptive practices, a member of the proposed class who had actual knowledge of the disputed costs cannot prove causation or damages.  (Doc. 146 at 13-14.) BellSouth's argument, however, conflates the elements of a cause of action under the FDUTPA.

Both of the cases BellSouth relies on in its motion, <u>Hutson v. Rexall Sundown, Inc.</u>, 837 So.2d 1090 (Fla. 4th DCA 2003), and <u>Green v. McNeil Nutritionals, LLC</u>, No. 2004-0379-CA, 2005 WL 3388158 (Fla. Cir. Ct. Nov. 16, 2005), merely hold that a plaintiff must prove actual damages.  In <u>Hutson</u>, the plaintiff filed a class action alleging that the defendant engaged in deceptive conduct under the FDUTPA by misrepresenting the amount of calcium in a nutritional supplement.  837 So.2d at 1091.  The plaintiff claimed she had suffered damages because each pill contained less calcium than represented, increasing the cost of a daily dose.  <u>Id.</u>  The court explained that "[b]ased on the facts of this case, a person who had actual knowledge of the number of softgels needed to be taken per serving would not have suffered any damages as a result of the alleged deceptive trade practice and,

therefore, would have no cause of action." Id. at 1093.

Similarly, in Green, the plaintiff brought a class action claiming that the defendant had engaged in deceptive advertising with regard to its product, Splenda.  2005 WL 3388158, at *1.  The plaintiff contended that the defendant's deceptive advertising caused consumers to believe that Splenda is natural and contains sugar.  Id.  The court held that "whether a purported class member suffered a loss depends on the individual's reason for purchasing Splenda."  According to the court, if a customer bought Splenda with the understanding that it was not a natural product, he was not harmed by the defendant's deceptive advertising. Id. at *7.

Unlike in the instant case, the plaintiffs in Green and Hutson only suffered damages if they were actually deceived by the defendants' conduct. Consumers in those cases who purchased the product with full knowledge of its contents received the same product they bargained for and thus were not harmed by the defendant's deceptive advertising.  Unlike the consumers in Green and Hutson, plaintiffs in this case suffered damages by paying BellSouth's alleged overcharges regardless of their knowledge regarding BellSouth's billing practices.  If BellSouth had not charged the disputed amounts, plaintiffs would have paid BellSouth less for the damage to its facilities.  In fact, the court in Green distinguished cases where "each member of the respective class sustained a loss whether or not he relied on the defendant's alleged violation of FDUPTA."  Id. at *7.

Rather than affect causation and damages, plaintiffs' knowledge of BellSouth's billing practices is instead relevant to the element of deception.  To show that a defendant's conduct was deceptive, a plaintiff must show that the conduct was "likely to mislead [a]

11

consumer acting reasonably <u>in the circumstances</u>," <u>Zlotnick</u>, 480 F.3d 1284 (emphasis added, quotation omitted), including the plaintiff's knowledge and level of sophistication. <u>See</u> <u>Pop's Pancakes, Inc. v. NuCO2, Inc.</u>, 251 F.R.D. 677, 686 (S.D. Fla. 2008); <u>Egwuatu v.</u> <u>South Lubes, Inc.</u>, 976 So.2d 50, 53-54 (Fla. 1st DCA 2008).  Courts have thus denied class certification of FDUPTA claims based on allegedly deceptive fees when the circumstances in which each putative class member was charged the fee varied and could have affected whether a reasonable consumer would have been misled by the defendant's conduct.  <u>See</u> <u>Pop's Pancakes</u>, 251 F.R.D. at 686; <u>Egwuatu</u>, 976 So.2d at 53-54.[4]

In the Amended Complaint, plaintiffs allege that BellSouth's billing practices were deceptive because, among other things, a reasonable excavator would have believed that BellSouth only billed amounts that could be recovered in an action at law.  (Doc. 104 at 16-18.)  BellSouth has presented no reason to believe that any of the putative class members were aware of the amount of indirect costs charged or that BellSouth was allegedly billing in excess of what it could legally recover.  Instead, BellSouth merely contends that some class members were aware that their bills included indirect costs such as overhead.[5]  (Doc.

---

[4] In <u>Egwuatu</u>, for example, the plaintiffs alleged that the defendant, a chain of oil service stations, violated the FDUTPA by charging an "environmental fee" without disclosing that the fee was not a tax.  The court held that class certification was inappropriate because the circumstances in which the plaintiffs were charged the fee varied and some plaintiffs should have been aware that the fee was not a tax.  <u>Id.</u> at 53-54.  Because a consumer acting reasonably in such circumstances would not have been misled, the court held that individual issues predominated over the issue of whether the defendant's actions were deceptive.

[5] As evidence, BellSouth claims: (1) some plaintiffs discussed their bills with BellSouth; (2) many plaintiffs are sophisticated business entities; and (3) some billing forms indicated that "indirect costs" were included.  (Doc. 146 at 13.)  BellSouth has identified 168 occasions in which it discussed its damage calculations with putative class members.  According to

146 at 13.)  The class members' alleged awareness that BellSouth was charging indirect costs, however, is simply not relevant to the issue of whether BellSouth was deceptive by charging amounts that it was not entitled to recover under Florida law.  There is thus no evidence that the individualized circumstances of any of the putative class members will affect whether a reasonable consumer would have been misled by BellSouth's billing practices.  Proving deception under FDUTPA is thus susceptible to common proof on a class-wide basis.

### ii.  Plaintiffs' Fraud Claims

Under Florida law, "there are four elements of fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation."  Butler v. Yusem, 44 So.3d 102, 105 (Fla. 2010) (quotation omitted).  BellSouth contends that determining whether each class member relied on the allegedly false representations in its bills is not susceptible to class-wide proof.  According to BellSouth, a class member who had knowledge of the disputed costs could not have acted in reliance on BellSouth's misrepresentations, and determining whether each class member had such knowledge will require individualized inquires that would predominate over any common issues.  (Doc. 146 at 20.)

---

BellSouth, "it is reasonable to assume that during these conversations, overheads and indirect costs were discussed." (Doc. 146 at 5.) This evidence, however, does not show that any putative class member knew that BellSouth allegedly billed more than it was entitled to recover.

BellSouth, however, mischaracterizes the issue of reliance in this case. To demonstrate reliance, plaintiffs must show that the putative class members paid BellSouth's bills in reliance on BellSouth's representation that the bills reflected the amounts it could recover in an action at law. The issue thus is not whether the putative class members knew that BellSouth's bills included indirect costs; instead, the question is whether the putative class member knew that BellSouth charged amounts that were not legally recoverable. Although any class member who was aware that BellSouth had overcharged for its repair work would be unable to claim reliance, as discussed above, there is no evidence that any putative class members had such knowledge.

"Under well-established Eleventh Circuit precedent, the simple fact that reliance is an element in a cause of action is not an absolute bar to class certification." Klay, 382 F.3d at 1258. "[W]hile each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)." Id. at 1259.[6] Because BellSouth has presented no evidence that any putative class member was aware that BellSouth was allegedly charging more than it could recover in an action at law, plaintiffs may prove reliance for each class member through circumstantial evidence that is common to the class. Common issues thus will predominate in plaintiffs' fraud claims.

---

[6] Although Florida courts have found that "multiple claims of intrinsic fraud cannot meet the test of commonality" under Florida class action law, see Egwuatu, 976 So.2d at 53, this Court must follow the Eleventh Circuit's interpretation of the requirements of Federal Rule of Civil Procedure 23(b)(3).

### iii.  Plaintiffs' Unjust Enrichment and Money Had and Received Claims

"The elements of a cause of action for unjust enrichment are (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Greenfield v. Manor Care, Inc., 705 So.2d 926, 930-31 (Fla. 4th DCA 1997). Under Florida law, the elements of a claim for unjust enrichment and money had and received are the same. Kelley v. Palmer, Reifler, & Associates, P.A., 681 F. Supp. 2d 1356, 1359 (S.D. Fla. 2010).

BellSouth contends plaintiffs' unjust enrichment claims are not susceptible to class treatment.  (Doc. 146 at 20.)  BellSouth relies on Vega v. T-Mobile USA, Inc., which states that, "[d]ue to the necessity of [an] inquiry into the individualized equities attendant to each class member, . . . . common questions will rarely, if ever, predominate an unjust enrichment claim."  564 F.3d 1256, 1274 (11th Cir. 2009) (applying Florida unjust enrichment law).

In County of Monroe, Florida v. Priceline.com, Inc., however, the court held that common questions can predominate in unjust enrichment claims where "the defendant's conduct is the same as to all members of the putative class." 265 F.R.D. 659, 671 (S.D. Fla. 2010).  The court in Priceline.com explained that, in such a situation, the Vega court's concern that unjust enrichment claims "typically require individualized inquiries into the equities" is not present, because, when the defendant's conduct is the same, "it is difficult to conceive of any significant equitable differences between class members." Id.  Courts thus have upheld the certification of unjust enrichment claims in certain situations. See id.

15

(citing cases within the Eleventh Circuit); ARVIDA/JMB Partners v. Council of Villages, Inc., 733 So.2d 1026, 1031 (Fla. 4th DCA 1999).

Although unjust enrichment ordinarily requires individualized inquiries, this is not an ordinary case.  As in Priceline.com, BellSouth's conduct was the same with regard to each class member in all relevant respects.  The issue of whether it is equitable for BellSouth to retain the full amount of its bills when such amounts exceeded what BellSouth could recover in an action at law thus appears to be subject to common proof.  BellSouth has failed to explain why it would be equitable for it to retain the amounts collected from some of the putative class members, but inequitable to retain the amounts collected from others.[7]

### iv.  BellSouth's Counterclaims

BellSouth contends that, even if liability under plaintiffs' claims is subject to common proof, its counterclaims will raise numerous issues requiring individual determinations that will predominate over plaintiffs' claims.  Although the Court has dismissed most of the counterclaims on jurisdictional grounds, including all counterclaims against the putative class members, the counterclaims against the named plaintiffs for damages arising from incidents for which plaintiffs paid BellSouth's bills are compulsory.  (Doc. 168.)  "In determining whether individual or collective issues predominate, we look not only to the plaintiff's allegations, but also to any compulsory counterclaims."  Klay, 382 F.3d at 1254 n.7.

BellSouth's compulsory counterclaims against the named plaintiffs will not

---

[7] Although equitable differences could exist for class members who knew that BellSouth was charging amounts that it could not recover in an action at law, as explained above, BellSouth has presented no evidence that any of the class members had such information.

16

predominate over plaintiffs' claims.  Although these counterclaims relate to seventeen separate incidents of damage to BellSouth's facilities, the claims will be significantly streamlined by the procedures set out in the Damage Prevention Act.  Litigation of the counterclaims will thus primarily concern damages, and common questions of damages are likely to predominate.   While the counterclaims will require some individualized determinations, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." See Klay, 382 F.3d at 1254 (quoting In re Theragenics Corp. Secs. Litig., 205 F.R.D. at 697).

BellSouth also argues that, even if its counterclaims are dismissed, the same issues will be raised in its affirmative defense of set-off, thus precluding certification on predominance grounds.  "A set-off is a permissive counterclaim . . . . that is interposed defensively . . . to defeat or reduce a plaintiff's recovery but which does not seek affirmative relief."  Allapattah Services, Inc. v. Exxon Corp., 157 F.Supp. 2d 1291, 1322 (S.D. Fla. 2001).

BellSouth's set-off rights, however, do not defeat certification.  "Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members."  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003).  Moreover, BellSouth's set-off claims will affect only the measure of damages, and  individual determinations of damages do not ordinarily preclude certification when liability can be established on a class-wide basis.  See e.g., Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1261 (11th Cir. 2003) ("[N]umerous courts have recognized that the presence of individualized damages issues

17

does not prevent a finding that the common issues in the case predominate. . . . We agree.")
(internal citations omitted); <u>Sterling v. Velsicol Chem. Corp.</u>, 855 F.2d 1188, 1197 (6th Cir.
1988) ("No matter how individualized the issue of damages may be, these issues may be
reserved for individual treatment with the question of liability tried as a class action").

### 2. Superiority

The second prong of Rule 23(b)(3) requires the plaintiffs to demonstrate that "a class
action is superior to other available methods for the fair and efficient adjudication of the
[claims]." Fed. R. Civ. P. 23(b)(3).  The rule lists four factors the Court should consider in
assessing superiority:

> (A) the interest of members of the class in individually controlling
> the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the
> controversy already commenced by or against members of the
> class;
>
> (C) the desirability or undesirability of concentrating the litigation
> of the claims in the particular forum;
>
> (D) the difficulties likely to be encountered in the management
> of a class action.

<u>Id.</u>

There is no indication that any class members are separately pursuing other cases
involving the same controversy.  The parties also have not identified any interest the class
members may have in individually controlling separate actions.  Similarly, no party has
argued that it would be desirable to litigate any claims in a different forum.  Considering that
the Court has already addressed a host of preliminary matters in this case (including motions

18

to remand, to dismiss, and for summary judgment), it seems appropriate to adjudicate these claims here.  See Klay, 382 F.3d at 1271 ("[I]t is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters.").

BellSouth does, however, contest the manageability of the class. (Doc. 146 at 16.) Among other concerns, BellSouth states that it will be difficult to identify which class members actually paid BellSouth's bills.  According to BellSouth, many bills were paid by insurers and many class members were reimbursed.  (Id.)

When determining if a class action is superior, "we are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives (including, most notably, [thousands of] separate lawsuits by the class members)." Klay, 382 F.3d at 1273. "Courts are generally reluctant to deny class certification based on speculative problems with case management.  Even potentially severe management issues have been held insufficient to defeat class certification." Id. at 1272-73.  Moreover, "where a court has already made a finding that common issue predominate over individualized issues, [that court] would be hard pressed to conclude that a class action is less manageable than individual actions." Id.  The potential manageability problems raised by BellSouth are primarily those that are "intrinsic in large class actions" and are not the type of issues "that would render a class action impracticable in this case." Id.  The Court thus finds that a class action, which at bottom presents the common issue of whether BellSouth has overcharged all class members in the same way, is superior to other methods of adjudicating this case.

19

The requirements of Rule 23(b)(3) have thus been met.[8]

    It is hereby

**ORDERED:**

1.  Plaintiffs' Motion for Class Certification (Doc. 131) is **GRANTED**.

    A. The Court hereby certifies the following class under Rule 23(b)(3):

        i.  All excavators or excavating contractors within the meaning of the Underground Facility Damage Prevention and Safety Act, F.S.A. § 556.101,

        ii.  who paid a bill from BellSouth for the cost of repairing damage to BellSouth's underground facilities in Florida

        iii.  during the period from June 28, 2003 through March 28, 2011,

        iv.  with the following exceptions:  BellSouth's officers, directors and employees; any damagers who have furnished BellSouth with a written release of their claims; and any damagers who have entered into a contract with

---

[8] Plaintiffs alternatively seek to certify the class under Rule 23(b)(2).  That Rule provides that certification is appropriate where: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Certification under Rule 23(b)(2), however, is inappropriate when "[m]ost of the class consists of individuals who do not face further harm from [the defendant's] actions, . . . [because such class members] have nothing to gain from an injunction, and the declaratory relief they seek serves only to facilitate the award of damages." Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 978 (5th Cir. 2000).  In this case, most of the putative class members have paid only one damage claim to BellSouth (Doc. 146-14, at 4), and plaintiffs have not suggested any reason to believe that such class members are likely to damage BellSouth's facilities in the future.  Although plaintiffs are required to satisfy only one subsection of Rule 23(b) (and thus certification is appropriate under Rule 23(b)(3)), the requirements of Rule 23(b)(2) have not been met.

BellSouth requiring that their claims be arbitrated.[9]

B.  The class is certified with respect to plaintiffs' claims in Counts I-IV for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, fraud, unjust enrichment, and money had and received.

2.  The Court may establish sub-classes on the question of damages after liability is determined to address BellSouth's set-offs and counterclaims.

3.  James D. Hinson Electrical Contracting Co., Inc. and Jensen Civil Contracting Co., Inc. are hereby certified as class representatives.

4.  Kenneth S. Canfield, David S. Hagy, and John S. Kalil are hereby certified as Class counsel.

5.  No later than **April 7, 2011**, plaintiffs shall submit to the Court for approval a proposed notice to the class members in accordance with Federal Rule of Civil Procedure 23(c)(2)(B).  Plaintiffs shall also identify and describe any measures they propose to take to locate and notify potential class members.  Prior to filing this proposed notice, plaintiffs shall confer with Defendant in an attempt to agree on the language of the class notice.   If an agreement is not reached, BellSouth may file objections to plaintiffs' proposed notice or submit an alternative proposed notice no later than **April 14, 2011**.  To the extent BellSouth has not already done so, it is directed to make available to plaintiffs all evidence in its possession that may assist plaintiffs in locating members of the class.  The issue of class

---

[9] Under Rule 23(c)(1)(C), this class is subject to decertification or adjustment as appropriate before a final judgment is rendered.

21

notice will be discussed at the April 18, 2011 status conference.

     **DONE AND ORDERED** at Jacksonville, Florida, this 28th day of March, 2011.


                                           _____
                                           TIMOTHY J. CORRIGAN
                                         United States District Judge


js.

Copies to:

Counsel of Record